UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Criminal Case No. 03-cr-00232-RPM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

EDWARD P. MATTAR, III,

        Defendant.

---

## CALCULATION OF ADVISORY GUIDELINES

Pursuant to the directions of the Tenth Circuit Court of Appeals that the determination of a reasonable sentence under 18 U.S.C. § 3553 must begin with a calculation of an applicable sentencing range under the United States Sentencing Commission Guidelines Manual (U.S.S.G.) and following the hearing on June 6, 2007, at which the Court determined that the calculations shall be based on the evidentiary record of the jury and non-jury trials, the Court makes the following preliminary calculation of defendant Edward Mattar's guideline sentencing range which shall be considered as the equivalent of a presentence report required by Fed.R.Crim.P. 32(d)(1).

### Procedural History

After a non-jury trial, the Court entered findings pursuant to Fed.R.Crim.P. 23(c) as to the defendants Edward P. Mattar, III, T. Alan Boyd, and Jack O. Grace, Jr., resulting in their convictions on Counts 1, 26-31, 53 and 54, 58, 59, 60 and 62-64,

finding violations of 18 U.S.C. § 371, § 1344, § 1005, § 1343. On August 9, 2007, Mattar entered pleas of guilty on Counts 92 and 93, violations of 26 U.S.C. § 7203. The statutory penalties for the counts of conviction are as follows:

| | |
|---|---|
| Count 1 | Conspiracy<br>18 U.S.C. § 371<br>NMT 5 years; NMT $250,000 fine, or twice the loss or gain from the offense; NMT 3 years supervised release; $100 special assessment<br>Class D Felony<br>Date of Offense: January, 1998 to August, 1998 |
| Counts 26-31 | Bank Fraud<br>18 U.S.C. § 1344<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: January, 1998 to July 22, 1998 |
| Counts 53-54 | False Bank Reports<br>18 U.S.C. § 1005<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: January, 1998, to April 30, 1998 |
| Counts 58-60, 62-64 | Wire Fraud<br>18 U.S.C. § 1343<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: April, 1998, to July 22, 1998 |
| Counts 92-93 | Willful failure to file return, supply information, or pay tax.<br>26 U.S.C. § 7203<br>NMT 1 year; NMT $25,000 fine, or both; restitution; $100 special assessment fee. |

Following the entry of findings on February 12, 2007, the Court held a hearing on February 21, 2007, with counsel for the government and all defendants, resulting in orders requiring the government to file updated sentencing position statements with respect to all defendants by March 14, 2007, with the defendants' replies due April 4, 2007.  The government's statement as to sentencing was filed on March 14, 2007, and each of the defendants filed their respective responses.  An Order Establishing Sentencing Procedures was entered on April 16, 2007, to which the government filed an objection on May 1st, 2007.  That objection was heard on June 6, 2007, and all counsel agreed that the Court would calculate an advisory guidelines sentencing range and then counsel would submit their written objections to be considered at sentencing hearings.  The Court granted Mattar's motion to postpone his sentencing until after resolution of Counts 91 through 94, charging him alone.  Defendants Baetz and Gallant were sentenced on August 17, 2007; defendants Boyd and Grace were sentenced on August 24, 2007.  Mattar entered pleas of guilty on Counts 92 and 93 on August 9, 2007.  On August 10, 2007, the government filed a position on sentencing guidelines as applied to these counts.  Mattar filed a response on August 24, 2007.

It is agreed that the United States Sentencing Commission Guidelines Manual for 1997 is applicable and that the counts of conviction, except for the tax counts, should be grouped pursuant to U.S.S.G. § 3D1.2(d), Comment (n.6), and that these counts are considered under § 2F1.1, Offenses Involving Fraud.

**Offense Level Computations**

Base Offense Level            6

Specific Offense Characteristics

§ 2F1.1(b) directs that the offense level is increased incrementally according to the amount of the loss exceeding $2,000. Application Note 7 refers to the discussion in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) and provides that, as in theft cases, loss is the value of the money, property or services unlawfully taken.

The Commentary to § 2B1.1, Application Note 2, defines loss as "the value of the property taken, damaged or destroyed" and then gives examples. Notably, it cross references to the Commentary to § 2F1.1 where the offense involved making a fraudulent loan "or other unlawful conduct involving a loan or credit card."

Application Note 7(a) for § 2F1.1 provides that for fraud involving the misrepresentation of the value of an item that does have some value, as for example "stock", the loss is the amount by which the stock is overvalued. Application Note 7(b), referring to fraudulent loan applications provides as follows:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used.

The essence of the wrongful conduct reflected in all of the counts of conviction excluding the tax counts is that BestBank was making loans to Century based on

representations that credit cards had been issued to applicants who qualified for them; that payments were being made timely on those accounts; and that Century would indemnify the Bank for losses from non-performing accounts. Those representations were both false and true, that is, there were accounts recorded that were invalid from the beginning and there were accounts falsely reported as performing; but, there were also valid and performing accounts. Century did pay substantial amounts for non-performing accounts and the extent to which it could pay additional indemnification at the time of the Bank's closure cannot be determined from the record before this Court.

The amount of losses caused by the defendants cannot be calculated by any formula that fairly considers their individual roles in the offenses and the intervention by the bank regulators and the FDIC as receiver. That is illustrated by the government's varying suggestions. All of them are based on considerations of consequential losses resulting from the Bank's closure. In *United States v. Izydora,* 167 F.3d 213, 223 (5th Cir. 1999), the Fifth Circuit Court of Appeals wrote a persuasive analysis of this guideline resulting in the conclusion that consequential losses should not be considered in a case of wire fraud and bankruptcy fraud. Thus, there the bankruptcy trustee's fees were erroneously included by the trial court. That case is analagous.

The fraud in this case is the concealment of the multiple failures of performance of the Marketing Agreement by Century after the All Around Travel Club membership program became operational. Baetz and Gallant initiated the manipulation of performance data to disguise those failures from the bank officer defendants. When they became aware of the falsity in the data underlying the Bank's records, the Bank

officers became active participants in the falsification of the Bank's records and reports. While co-conspirators may be liable for the criminal acts of all those with whom they conspire, fairness in sentencing requires that some consideration be given to their individual culpability. Under the Guidelines matrix, that can be done by measuring the amount of the loss according to what each of them received.

As a bank officer Mattar is responsible for loss in the amount of his bonuses. Evidence at trial established that Mattar took bonuses in the amount of $4,743,909. His offense level is increased by 13 levels to 19.

Under 2F1.1(b)(2), if the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, the offense level is increased by 2 levels. The fraud counts involved more than minimal planning, and Mattar's offense level should be increased two levels pursuant to § 2F1.1(b)(2).

Pursuant to 2F1.1(b)(6)(A) and (B) the offense level is increased by 4, or to level 24 if the offense level is less than 24, if the offense substantially jeopardized the safety and soundness of a financial institution; or affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense. Evidence at trial established that as to Mattar the offense conduct jeopardized the safety and soundness of BestBank. The offense level is increased to 24.

Based upon the defendant's role in the offense, the offense level is increased by 4 levels if the defendant was an organizer or leader of a criminal activity that involved 5 or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a). Many employees of Century and BestBank were required to accomplish the deception in this

case. Mattar was the owner and chairman of the board at BestBank. Mattar's offense level is increased by four levels under this section.

The government also argues that Mattar abused his position of trust, so his role in the offense should be increased by two levels pursuant to § 3B1.3. That adjustment may not be employed if an abuse of trust is included in the determination of other specific offense characteristics and that is the case here where § 3B1.1(a) has been employed because of the position held by this bank officer.

Based on the foregoing, the adjusted offense level for Mattar for Counts 1, 26-31, 53-54, 58-60, and 62-64 is 29.

The Sentencing Guideline applicable to Counts 92 and 93 is § 2T1.1. It encompasses tax evasion, fraudulent or false returns and willful failure to file return, supply information or pay the tax within the same matrix using the amount of the tax loss as the core determinant of the base offense level. Under § 2T1.1(c)(2) the tax loss is the amount of tax that the taxpayer owed and did not pay. The tax loss shall be treated as equal to 20% of the gross income.

Under the plea agreement for these counts the parties stipulated that Mattar had income of at least $7,000 per year, that is more than the amount requiring him to file the tax returns. The government filed its position statement on August 10, 2007, asserting that Mattar's gross income was $1,000,000 in 1997 and $3,100,000 in 1998. To support these assertions, the government submitted a report by Timothy Chase, an Internal Revenue agent, summarizing his analysis of documents reflecting payments from BestBank to Effective Management Systems and its expenses in reaching his

conclusions regarding the alleged tax violations of that corporate entity.  He also reported that checks payable to EMS from BestBank were deposited to accounts that were not EMS accounts and were allegedly controlled by Mattar.  The assumption made is that these deposits were taxable income to Mr. Mattar.

The only direct conclusion stated by the agent was that Mattar had gross income exceeding $6,800 and $6,950 for these years.

The defendant has objected to the government's position.  The trial record before this Court on which guideline calculations are made for the fraud counts did not include the information necessary to determine Mattar's gross income for 1997 and 1998.  Such a determination would require an evidentiary hearing and would be contrary to the plea agreement and perhaps the defendant's entitlement to jury trial.  Accordingly, there is no tax loss and the base offense level is 6, making the guideline range 0-6 months.  Sentencing on these counts will be considered by applying the statutory factors in 18 U.S.C. § 3553.  Because they are not grouped with the other counts, the sentences may be imposed consecutively to the sentences on those counts and to each other.

### Restitution

Fed.R.Crim.P. 32(c)(1)(B) directs that the probation officer must conduct an investigation and submit a report that contains sufficient information for the Court to order restitution.  The probation officer has been excused from that direction in this case because of the complexities, both legal and factual, involved in complying with 18

U.S.C. § 3663A as set forth in this order and in the Court's earlier orders of April 16, and May 11, 2007.

The initial step in applying the Mandatory Victim Restitution Act (MVRA) is the identification of victims of the offenses for which the defendants have been convicted. The prosecution has urged that restitution be paid to the FDIC, Cerberus Partners, John Aspell and David Taffet.

John Aspell and members of his family seek recovery for losses claimed to result from the purchase and sale of Columbia Capital Corporation stock. These transactions were in July, 1998, after the closure of the Bank. At best they could be considered to be related to the conspiracy in Count One but they are based on the failure of the public filings by Century reflecting its financial condition. These claims are within a class action lawsuit in the Southern District of California. The claims are not sufficiently connected to any count of conviction to be considered under the MVRA.

David Taffet incurred expenses in an aborted effort to market the AATC credit card portfolio in June and July, 1998. Communications with him are the subject of wire fraud charges in Counts 68 through 70, 72 and 73. Only Baetz and Gallant were convicted on those counts. Although the jury was persuaded that there was a sufficiently developed and identified scheme to defraud him through misrepresentations and omissions concerning the value of the amounts, this Court disagreed in its findings in the trial of the bank officer defendants. That uncertainty is the basis for denying compensation to him in the form of restitution as a component of a criminal sentence. The statute in § 3663A(a)(2) defines "victim" as a person directly and proximately

harmed by the offense and limits restitution to those "directly harmed" by the defendant's criminal conduct in the course of a scheme or conspiracy. Neither Aspell nor Taffet are within that definition.

Cerberus Partners could only be considered a victim of the offense of securities fraud charged in Count 90. None of the defendants was convicted on that charge.

BestBank, a state chartered bank, whose deposits were insured by the Federal Deposit Insurance Corporation, was solely owned by defendant Mattar, who moved to dismiss the bank fraud charges as to him on the premise that he could not be guilty of defrauding himself. In denying that motion, this Court observed that the shareholder's interest is separate from the bank as a financial institution, which has other stakeholders, including the FDIC, depositors whose accounts exceeded the $100,000 insurance and creditors. The Bank is an institutional victim under the definition in § 3663A. As the appointed receiver, the FDIC assumed all of the assets of the Bank, which may be assumed to include the right to receive restitution. The FDIC sold the Bank's saleable assets to Pueblo Bank & Trust Co., and paid the depositors entitled to insurance. The FDIC claimed entitlement to restitution for all amounts it paid but did not deduct any amounts it received from the sale of assets. Government counsel concede that the FDIC claim is excessive. They argue that restitution should be measured by the estimated true value of the AATC loan portfolio and suggest that amount can be estimated by taking 25% of the face amount of that portfolio at the date of the Bank's closing on the assumption that it represents a fair estimate of the number of valid accounts.

In a recent opinion, the Tenth Circuit Court of Appeals repeated its holding in *United States v. Quarrell,* 310 F.3d 664 (10th Cir. 2002) that a restitution order must be based on the actual loss which the government bears the burden of proving, *United States v. Hudson,* 483 F.3d 707 (10th Cir. 2007). The approximations which may support the calculation of the amount of loss for determining the specific offense characteristic for the Sentencing Guidelines may not be used to support a restitution order.

Following the hearing on June 6, 2007, the parties filed a Stipulation "concerning settlements in related civil actions." In 1998, the FDIC initiated a civil action, 98-M-2374, against defendants Mattar, Boyd, Effective Management Systems, Century Financial Group, Baetz and Gallant. Lori Boyd was also named as a defendant. The FDIC and Boyd entered into a settlement agreement providing that Boyd promised to pay the FDIC $1,000,000 within 30 days. Upon the FDIC's motion to find Boyd in violation of the settlement agreement, and after a hearing, this Court entered judgment against Thomas Alan Boyd and Lori Boyd, jointly and severally, for $1,012,712.50. Since then, Boyd has made payments totaling $457,000.00. Grace was not named a defendant in the FDIC civil litigation. The civil action was stayed on October 10, 2002.

The procedural requirements for orders of restitution in § 3664 attempt to provide for the resolution of disputes as to the identity of victims and the amounts of their losses with a minimum of adversarial adjudication. While the inquiry into the financial resources of the defendant required in § 3664(d)(3) and (4) is not relevant to the order for restitution because of subsection (f)(1)(A), it is necessary for determining

the manner and schedule of payments under subsection (f)(2) and (3) and § 3572. Compliance with those provisions would entail detailed evidentiary hearings.

Rule 32(b) directs the imposition of sentence "without unnecessary delay." Recognizing that a fair and just order of restitution in cases of such complexity as this one is difficult and time consuming, Congress provided in § 3663A(c)(3)(B) that if the burden on the sentencing process outweighs the need to provide restitution to any victim due to determining complex issues of fact relating to the cause or amount of the victim's loss, the MVRA shall not apply. That is the case with respect to the FDIC. Civil Action No. 98-M-2374 will resume after sentencing in this case. Accordingly, the FDIC will have a full opportunity to attempt to recover its losses in a civil damages remedy. That action is itself complex and was pending before this criminal prosecution began. The sentencing hearing for Mattar has already been long delayed. Further delay to develop an order of restitution is not in the public interest.

## FORFEITURE

Count 95, seeking forfeiture under 18 U.S.C. § 982 was reserved from the non-jury trial of the bank officer defendants. Under that statute and Rule 32.2, the Court proposes to enter a final order of forfeiture at sentencing in the form of a money judgment in the amount of loss attributed to Mattar in the calculation of the specific offense.

Using the foregoing as the basis for proceeding with sentencing under Rule 32, it is

ORDERED, that objections under Rule 32(f) will be filed on or before September 19, 2007, and it is

FURTHER ORDERED, that sentencing of defendant Mattar will be on October 19, 2007, at 10:00 a.m.

DATED: September 4th, 2007

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge